SOUTHERN BELL TELEPHONE & TELEGRAPH CO. *et al. v.* QUICK.

(In Banc. June 12, 1933.)

[149 So. 107. No. 30276.]

**Dunn & Snow**, of Meridian, and **Butler & Snow**, of Jackson, for appellants.

**Bozeman & Cameron** and **M. V. B. Miller,** all of Meridian, for appellee.

446

Argued orally by **Chas. B. Snow,** for appellants, and by **Chas. Cameron** and **M. V. B. Miller,** for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellee, W. J. Quick, instituted this suit in the circuit court of Lauderdale county against the appel-

lants, the Southern Bell Telephone & Telegraph Company and O. K. Stewart, seeking to recover damages for personal injuries alleged to have been sustained. In a collision between an automobile driven by the appellee and one belonging to the telephone company driven by the appellant Stewart, its employee. There was a verdict and judgment for eight thousand dollars against both appellants, from which judgment this appeal was prosecuted.

The proof shows that the said O. K. Stewart had been employed for a number of years by the appellant telephone company as a "trouble shooter" in the city of Meridian, Mississippi, his duties being to repair telephone cables and wires on orders given him so to do. For use in the discharge of the duties of his employment, the appellant company furnished Stewart an automobile in which he carried necessary tools, appliances, and equipment likewise furnished by the company. On all working days, except Saturdays, Stewart's hours of service were from eight A. M. to five P. M., with one hour, twelve M. to one P. M., for lunch. On Saturdays, in the usual and ordinary course of his employment, his working hours were from eight A. M. to one P. M. On the occasion in question, which was on Saturday, Stewart was engaged in repairing wires attached to one of the company's poles, and, in order to complete the particular job, it was necessary for him to work until one-twenty P. M. Upon completing the repairs at that hour, Stewart, from his place on the telephone pole, called the office of the appellant company by telephone and reported the completion of the work about which he had been engaged, and was then told by his superior, one Mr. Johnson, who had the right to control his movements and order him to do any particular work, to "go get his lunch and report to the plant for the purpose of relieving him (Johnson) at the board."

At the time this order was given, Stewart was working overtime, and so was his superior, Johnson, who was then

engaged on the "power board" at the plant, which required the constant attention of an employee to maintain thereon the proper power for the operation of the telephone lines. Ordinarily, the appellant was off duty after one o'clock P. M. on Saturdays, but, on this occasion, he was ordered to remain on duty and report at the plant to take over the "power board" as soon as he could get his lunch on account of the fact that the servant of the company, whose duty it ordinarily would have been to relieve Johnson at the power board, was on a vacation.

The appellant Stewart testified that his instructions were not to use the automobile furnished him for the discharge of his daily duties in going to his lunch or when he was off duty, but to store it at such times in the company's warehouse or garage near its central plant and office; that he customarily went to his home for his lunch, and that fact was known to his superior, Johnson; that usually he used his own automobile for that purpose, but, on occasions when he was working in the vicinity of his residence, he used the company's automobile, but without the knowledge of his superior so far as he knew. The place where Stewart was working when he received the order to get his lunch and report at the plant for the purpose of relieving Johnson was on the direct route from the company's warehouse to his residence, the warehouse being six or seven blocks west of that place, while his residence was about ten blocks east. Upon receiving the order, Stewart descended from the telephone pole, placed his tools and equipment in the automobile, and drove it towards his residence for the purpose of getting his lunch before returning it to the company's warehouse; his purpose being, as testified to by him, to avoid walking and save time. When he had proceeded about six blocks in the direction of his residence, the collision occurred. His superior, Johnson, was at once summoned by telephone and, after he reached and inspected the scene, and had photographs

thereof made, Stewart drove the automobile directly to the warehouse, and after storing it, reported to the plant and took over the power board, where he worked until five 'P. M., without any lunch. While Stewart testified that it was only on rare occasions, when he was working near his residence at the lunch hour, that he used the telephone company's automobile for the purpose of going to lunch, several of his neighbors testified that usually and customarily he used it for that purpose.

It will be unnecessary to set out the facts in reference to the collision in which the appellee received his injury, as it is admitted that the evidence sustains the finding of the jury that it was caused by Stewart's negligence in operating the company's automobile. In addition to other evidence which amply supported the finding of such negligence, there was evidence admitted as against Stewart only of statements and admissions made by him at the scene of the accident as to his acts and conduct at the time which strongly tended to establish his negligence.

The assignments of error argued are: First, that the court erred in refusing the peremptory instruction requested by the telephone company, for the reason that "the proof conclusively and undisputedly showed that at the time of the collision, Stewart had left the scope of his employment and was using the automobile, not in furtherance of the business of the Southern Bell Telephone & Telegraph Company, but at and about his own personal private business on a personal mission of his own, the accomplishment of which was to further his own personal convenience and end, and was in no way in furtherance of the business of the Southern Bell Telephone & Telegraph Company;" second, that it was error to grant an instruction numbered 7 requested by the appellee; and, third, that the damages awarded are grossly excessive.

The evidence is undisputed that the automobile which caused appellee's injuries was owned by the telephone

company, and was furnished to Stewart for his sole use in discharging his appointed duties in the furtherance of the master's business; and, such being the case, it is the rule in this state, and appears to be the universal rule, that the burden developed upon the master to prove that its "servant had abandoned the duties of his employment, and gone about some purpose of the servant's own, in which the master's business was not concerned, and which was not incident to the employment for which the servant was hired," and, "if the testimony leaves this question in doubt, it must be submitted to the jury." Barmore v. Vicksburg, S. & P. Railway Co., 85 Miss. 42, 38 So. 210, 211, 70 L. R. A. 627, 3 Ann. Cas. 594; Slaughter v. Holsomback (Miss.), 147 So. 318.

Both parties to this appeal cite the Barmore case supra, in support of their respective contentions, but that case is not decisive of the exact point here presented. I' the collision in which the appellee received his injuries had occurred after the servant had secured his lunch and started back to the warehouse to store the master's automobile, the Barmore case would have been exactly in point and controlling; but, although the very able and exhaustive discussion of the general principles applica' le to the fact in that case is very helpful here, there is nothing therein which points the way to the solution of the question as to whether or not, upon the facts here presented, there was a total departure from the master's business, or only a deviation from his service which the master under all the circumstances had reason to expect. As announcing certain general applicable rules for determining the condition of liability of the master in such cases, this court in the Barmore case, supra, cited with approval the case of Ritchie v. Waller, 63 Conn. 155, 28 Atl. 29, 30, 27 L. R. A. 161, 38 Am. St. Rep. 361. In that case, which has probably been cited more generally than any other on the point, the Supreme Court of Connecticut, in discussing the manner of determining, as a fact, when an act is done in the execution

of the master's business within the scope of his employment, said: "Whether, then, the act of a servant, for which it is sought in a particular case to hold the master responsible, was done in the execution of the master's business within the scope of the employment, or not, must, from the nature of things, in most cases be a question of fact, to be determined as such by the jury or other trier, because no general rule of law has been, or probably can be laid down, the application of which will determine the matter in all cases. Sometimes, however, this question is determined by the court as a matter of law. But in by far the greater number of cases where the question of the master's responsibility turns, as in the present case, principally upon the mere extent of deviation by the servant from the strict course of his employment or duty, it has been generally held to be one of fact and not of law. In such cases it is, and must usually remain, a question depending upon the degree of deviation and all the attendant circumstances. In cases where the deviation is slight and not unusual, the court may and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions."

In the recent case of Loper v. Yazoo & M. V. R. Co. (Miss.), 145 So. 743, 745, in discussing the meaning of the phrase "scope of employment," the court held that this phrase "adopted by the courts for the purpose of determining a master's liability for the acts of his servants, has 'no fixed legal or technical meaning,' 39 C. J. 1282; and 'the ultimate question is whether it is just that the loss resulting from the servant's acts should be considered one of the normal risks of the business in

which the servant is employed which that business should bear.' A. L. I. Rest. Agency, Tent. Draft No. 5, 53. The matters of fact usually taken into consideration in answering this question are set forth in section 454, A. L. I. Rest., supra, one of which is 'whether the master had reason to expect that such will be done.' Little, if any, difficulty arises therein except in cases, as here, wherein the servant's conduct was in excess of that authorized. The consensus of authority, and the rule of this court, is, the fact that a servant's conduct was unauthorized does not bring it without the scope of his employment, provided it is 'of the same general nature as that authorized, or incidental to the conduct authorized.' [Citing authorities.]''

The difficulty of applying the legal rules to the ever varying facts and circumstances which present themselves is well illustrated by the fact that in the very able and exhaustive briefs of counsel in this case, in many instances, cases are cited from the same jurisdictions as tending to support the contention of the respective parties, the decision in each case being shaded and controlled by the particular facts presented, and for that reason it will be impossible within the compass of an opinion of reasonable length to undertake to set forth the facts and to distinguish this long list of cases from state and federal jurisdictions.

In the case at bar, facts were established from which the prima facie presumption arose that, at the time of the accident, the servant was acting within the scope of his employment and was engaged about his appointed duties. To meet the burden thus cast upon it to show that its servant was not about his master's business, the appellant company relied solely upon the testimony of the servant. This servant, also a defendant, was hostile to the appellee, and his testimony was so full of con tradictions, and he was so thoroughly contradicted by other witnesses in material respects, that the jury might well have been warranted in rejecting his testimony as

to his mission, the instructions given him by the master, and the customary use of the automobile by him, and the knowledge of the master of that fact. The fact is that Johnson, the telephone company's manager of the Meridian plant and territory, who was said to have given Stewart orders on the occasion in question, and who was in the best position of any one to know of the facts with reference to these matters, was in the courtroo ￢ during the trial, but was not offered as a witness; and the failure of the defendant company to present this witness who was present and who was friendly to it, and who knew exculpatory facts, if any one did, raised a strong presumption that such facts do not exist. Anderson v. Telephone & Telegraph Co., 86 Miss. 341, 38 So. 786. To like effect see, also, Hicks v. Nassau Electric Railway Co., 47 App. Div. 479, 62 N. Y. Supp. 597; Northern Pacific Railroad Co. v. Craft (C. C. A.), 69 Fed. 124; Gainesville, etc., Railroad Co. v. Wall, 75 Ga. 282.

The proof shows that the master furnished the servant an automobile for use in the discharge of his appointed duties; that for a long period of time he had been permitted and expected to use and drive this automobile over the streets of the city of Meridian without any directions as to the route he should travel; that his superior knew where he resided, and that he customarily went to his residence for his meals. On the occasion in question, the regular lunch hour of both Stewart and his superior, Johnson, had passed, and Johnson could not be relieved at the power board until the servant, Stewart, reported at the plant for that purpose. At the time the supposed order was given, Johnson knew that Stewart had the automobile and was at a point nearly midway between the warehouse and his residence, where he would get his lunch. He knew that, in order for Stewart to store the automobile in the wareroom and then go to his residence for lunch, it would be necessary for him to drive six or seven blocks west, and then, unless some un-

certain means of transportation could be secured, return on foot over the same route to the point where he had been working and ten city blocks beyond, requiring him to walk more than thirty-two city blocks on this June day before he could report to the plant and relieve his superior, who was working overtime and long past his usual lunch hour. At the time of the accident, there was in the automobile which the servant was driving tools, wires, and equipment belonging to the master, which it was his duty to care for and deliver, along with the automobile, to the wareroom; and it does not appear that the servant had abandoned this duty and ultimate purpose.

The collision occurred within ten minutes after Stewart received the order to get his lunch and report to the plant, and within six city blocks of the place from which he started to his residence; and, under the circumstances herein set forth, we think the master should reasonably have expected that the servant would use the automobile for the purpose indicated. Any other course on the part of the servant would have been the unexpected, and, in fact, the improbable, one; and we are of the opinion that it was proper to submit to the jury the question of whether or not, under all the facts and circumstances, the act of the servant in using the automobile was an act which the master had reason to expect would be done, and was so closely connected with and incidental to the discharge of the servant's appointed duty as to constitute a mere deviation from the scope of his employment, and not a total departure therefrom.

Many cases from other jurisdictions, wherein the facts are somewhat analogous, support the view above stated. In the case of Bryan v. Bunis, 208 App. Div. 389, 203 N. Y. Supp. 634, 635, one of the defendants, about the noon hour, directed his employee to take him from the shop to his home in an automobile truck owned by the defendant, and, when this had been done, he instructed

the employee to take the truck back to the shop. But, instead of returning directly, the employee started to his home for dinner, which involved a deviation of about a half mile. While making the journey to the employee's home, the truck struck and injured the plaintiff, and, in passing on the questions presented on appeal from a judgment in favor of the plaintiff, the court said:

"In determining whether or not liability exists under given circumstances, no hard and fast rule on the subject, either of time or space, can be applied. The choice of a different way back does not, as a matter of law, constitut⸲ an abandonment of the master's work. Riley v. Standard Oil Co., 231 N. Y. 301, 305, 132 N. E. 97, 22 A. L. R. 1382. Courts will not be limited by tests that are merely mechanical or formal; and its judgment though it may be guided by location in time and space, will not be controlled by such circumstances, if there are others that characterize the intent of the transaction. Fiocco v. Carver, supra, at page 223 [of 234 N. Y.], 137 N. E. 309, 310.

"In this case the defendant, directing the servant's movements, knew that the usual hour of meal time was at hand. He knew where the chauffeur lived. Certain employees are by law given a fixed period for the noonday meal. . . . Custom has decreed a similar period for others. This defendant knew that Evans was allowed the time from twelve to one for such purpose. The comparatively slight deviation by Evans of a half mile from the direct route back to the shop, in order that he might obtain his usual noonday meal, was not an engagement in a new, independent enterprise, or an abandonment of his master's work. It was a part of his daily duty, and when his employer took him from the shop at the noon hour, and, after his immediate errand was performed, directed him to return, it was within his contemplation that the ambit of the chauffeur's duty would not require him to be back at the shop until one o'clock, and that in the meantime at some place, presumptively his home, he would obtain his

midday meal. His employment was not changed, at least as a matter of law, by going to his home on this errand. Pallocco v. Lehigh Valley R. R. Co., 236 N. Y. 110, 140 N. E. 212. To go at the usual time for a meal (Sundine's Case, 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A, 318), and to his home after the day's work is done (Erie R. Co. v. Winfield, 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057 [Ann. Cas. 1918B, 662]), are incidents of employment.

"We have recently held that a slight deviation, even for the servant's own benefit, from the course of work required by the master, will not necessarily relieve the master from the liability for an accident occuring during such deviation. Bush v. Sinclair-Rooney & Co., 207 App. Div. 699, 201 N. Y. Supp. 804. The jury has found here, under proper instructions, that Evans had not abandoned the employment of the defendants when the accident occurred. The deviation, therefore, was but temporary, and the objective of Evans was the shop to which his duty and his master's direction called him at one o'clock.''

In Baum v. Schweitzer, 124 Misc. 516, 208 N. Y. Supp. 549, 550, the court said:

"In the present case the defendant's business was the selling of game and similar provisions to hotels and other consumers. The chauffeur was called upon to begin work very early in the day, and the hours of the actual deliveries to be made by him consumed the entire day. That he went to lunch at a somewhat unusual hour does not under these conditions, indicate that as a matter of law his stopping for lunch was not within the contemplation of the employment. To go seventeen blocks in an automobile in the city of New York is a detour requiring not over ten or fifteen minutes of time. . . . .

"There are some aspects of the testimony which throw doubt upon the correctness of the defendant's version of the facts which has been assumed herein. It was for the jury to pass both upon the correctness of this version and upon the further question whether the deviation, if

it occurred, was so material as to constitute a frolic rather than a detour.''

In the case of Butler v. Hyperion Theatre Co., 100 Conn. 551, 124 Atl. 220, 221, it was held that the question of whether or not the conduct of the servant was in the execution of the master's business within the scope of his employment was properly submitted to the jury; and the facts upon which this holding was based sufficiently appear from the following quotation from the opinion:

''The defendant claims that the evidence shows that Garrison [his employee] had specific directions to bring the car to the front of the Hyperion Theatre on Chapel street at noon of each day and leave it there during the luncheon hour, and then go and get his lunch and return for the car and new instructions; that on this day he did not bring the car and leave it in front of the theatre at noon, but used the car at that time and started to go to his home in it for lunch, contrary to his unmodified instructions. The defendant claims that these facts show that at the time of the collision he was not using the car in the execution of the defendant's business, and therefore the defendant was not liable for his negligence. . . . Under the evidence in this case the jury could reasonably have found that Garrison, the servant, was delayed in his work on the forenoon of the day in question, and was late, and that he reasonably believed he could perform the essentials of his employment in billposting with greater advantage to his master if instead of driving late to the theatre at luncheon time he drove first to his home and lunched and then drove to the theatre for instructions for his afternoon work, and that solely with intent to further and aid in the performance of his master's business he adopted that course of conduct. It is apparent, therefore, that the jury could reasonably have found that at the time of the collision Garrison was engaged in the execution of the master's business within the scope of his employment, and it could not

be questioned that with such a finding a verdict for the plaintiff could reasonably have been found.''

Many other cases might be cited holding that the question of whether or not the servant was in the execution of his master's business within the scope of his employment, was one of fact to be determined by the jury, among them being the following: Wagnitz v. Scharetg, 89 Cal. App. 511, 265 Pac. 318; Behrens v. Hawkeye Oil Co., 151 Minn. 478, 187 N. W. 605; Boehmer v. Short, 184 Ark. 672, 43 S. W. (2d) 541, 542; Kavale v. Morton Salt Co., 329 Ill. 445, 160 N. E. 752, 753; Crowell v. Duncan, 145 Va. 489, 134 S. E. 576, 577, 50 A. L. R. 1425; Dockweiler v. American Piano Co., 94 Misc. 712, 160 N. Y. Supp. 270, 271; Perry v. Haritos, 100 Conn. 476, 124 Atl. 44, 46; Barney v. Magenis, 241 Mass. 268, 135 N. E. 142, 143; Dennis v. Miller Automobile Co., 73 Cal. App. 293, 238 Pac. 739; Kruse v. White Bros., 81 Cal. App. 86, 253 Pac. 178; Edwards v. Earnest, 208 Ala. 539, 94 So. 598; Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361; Peterson v. R. Co., 265 Mo. 462, 178 S. W. 182; Drake v. Norfolk Steam Laundry Corp., 135 Va. 354, 116 S. E. 668; Loomis v. Hollister, 75 Conn. 718, 56 Atl. 561; Steffen v. McNaughton, 142 Wis. 49, 124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19 Ann. Cas. 1227; Nord v. West Michigan Flooring Co., 238 Mich. 669, 214 N. W. 236; Jordan Stabler Co. v. Tankersly, 146 Md. 454, 126 Atl. 65; Gulf Refining Co. v. Texarkana & Ft. S. R. Co. (Tex. Civ. App.), 261 S. W. 169; Fleischmann Co. v. Howe, 213 Ky. 110, 280 S. W. 496; Blaker v. Philadelphia Electric Co., 60 Pa. Super. Ct. 56.

The appellant telephone company complains of an instruction granted to the appellee. This instruction announced the principles of law in substantial compliance with the views herein expressed; and under the facts in this record the question to be decided was one of fact properly solvable by the jury. This instruction authorized the jury to return a verdict against both defendants, if it found that, at the time and place of the injury, the

servant was in the execution of the master's business within the scope of his employment, and that he was guilty of negligence which was the proximate cause of the injury. It is contended on behalf of the telephone company that, since there was evidence admitted against Stewart only which tended to show negligence on his part, the jury might well have found against him on negligence and in favor of the telephone company in that regard. Aside from the evidence tending to prove the negligence on the part of Stewart which was against him only, there was further evidence which amply supported the finding of negligence on his part; and it was proper to authorize a verdict against both defendants in the event the jury found that the servant was guilty of negligence which proximately contributed to the injury while he was engaged in the master's business within the scope of his employment.

Lastly, it is insisted that the verdict is grossly· excessive. The verdict is large, but it finds support in the evidence offered by the appellee, and we are unable to say that it is so grossly excessive as to evince passion and prejudice on the part of the jury. Consequently there is no basis on which we could justify interference with the judgment of the jurors in the sphere particularly committed to them. The judgment of the court below will therefore be affirmed.

Affirmed.

**McGowen, J.**, delivered a dissenting opinion.

I dissent in this case. The peremptory instruction requested by the appellant should have been granted by the court below.

Stewart, the employee who drove the automobile negligently and caused the injury to Quick, had abandoned the master's business at the time of the injury, and was using the automobile in violation of his contract with the master. The automobile belonged to the master, and

he was using it, not for any purpose of the master, but for his own private purpose—to procure his lunch. The right of contract still exists in this state; parties sui juris may make their own contracts so long as they do not violate any statute or public policy of this state, neither of which is involved here. Stewart was entitled to one hour for his lunch; the record shows that that was ample time for him to go to his home and to return to duty to relieve Johnson, his immediate superior. The use of the automobile was for his own convenience. The master was under no duty to furnish him with lunch or to provide him with transportation to his home for lunch. The servant had the option to pay his fare to a taxicab, to use his own automobile, or to walk. Some may think that it is a hardship on a servant in this day to walk. The so-called rule was in fact a contract by which the master stipulated that it did not furnish transportation by the use of its automobile, for the purpose of going to and from meals. From the moment that Stewart started the car in motion toward his home and away from the employment of his master he was not slightly deviating or detouring, he was engaging in purposes and business of his own wholly and entirely disconnected from the business of the master. He was not on duty.

The presumption of fact from the use of the master's instrumentality was dissipated and overthrown by the testimony of Stewart. Being unchallenged, the appellant was not called upon to introduce cumulative evidence. The contract as to Stewart going to his meals, and as to his having one hour for lunch, was thoroughly and fully established, and therefore the case could not be submitted to the jury on a mere presumption which always yields to the evidence establishing the converse.

In Canton Cotton Warehouse Co. v. Pool, 78 Miss. 147, 28 So. 823, 84 Am. St. Rep. 620, this court approved the following language: "An act done by a servant while engaged in his master's work, but not done as a means, or for the purpose, of performing that work, is not

the master's act." The court there further said: "The inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it,—whether in doing the act he uses the appliances of the master,—but whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account."

In Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594, this court specifically decided that, at the moment of the injury, Watson, the servant, was engaged in going to the place where service for the master was to be performed by him. The court found in that case the following facts: Watson was operating the appliance which it was his duty to operate. He was on the track at a place which he was compelled to pass over, and was proceeding to the place where his duty called, for the purpose of performing that duty, and at the time of the injury he was engaged about no affair of his own but was discharging in the usual and customary manner the business for which he was employed. Under such circumstances, the master is answerable for the tort of the servant. The court further held in that case that the tricycle being operated by Watson was a dangerous instrumentality per se, while this court held in the case of Vicksburg Gas Co. v. Ferguson, 140 Miss. 543, 106 So. 258, that an automobile propelled on the public highways of this state was not a dangerous instrumentality per se. So that I think the conclusion reached in the Barmore case, and the principle there announced, applied here, would justify the holding in the case at bar that the servant had not made a mere detour, but was engaged at the time on business of his own, and not that of the master. The servant there was on duty.

The rule which I think obtains and should be adopted by this court is found in 42 C. J., p. 1108, section 868:

·"The use by the chauffeur of the owner's vehicle for the purpose of going to and from his place of employment is a use for the purposes of the chauffeur, and the owner is not liable for an injury occasioned while it is being so used, either without his knowledge or consent or with his permission, as, for example, where he is going to or returning from a meal. The owner may, however, be liable where under the circumstances the chauffeur's use of the vehicle may be regarded as also for the owner's purposes, as where it enables the chauffeur to arrive earlier at his work, or shortens the time which he is required to have to procure his meals." The notes disclose a great array of authorities as sustaining this proposition.

I have quoted this section in full, and with reference to the latter part, as to arriving earlier at his work, in this case the master clearly had no concern therewith. The hour allowed to the servant for getting his meals is shown by the evidence to have been ample time, and Johnson, who was at the "board," was concerned as a servant for another servant to relieve him, and not the master. The master's business was being cared for, and it is a strained construction to say in the case at bar that the master was benefited by the servant's use of the automobile. The same strained construction could be placed on almost any private use to which the servant would put the master's appliances. He might go to the swimming pool, to the gymnasium, or to the grocery store, and it might be argued with plausibility that all of it would result in some remote manner to the master's interest. .

The controlling fact and the all-powerful question which stands out in all of these cases above everything else consists of the employee's use of the car solely for the purpose of enabling him to obtain his noonday meal. There is no liability of the master. See Bloom v. Krueger, 182 Wis. 29, 195 N. W. 851; Steffen v. McNaughton, 142 Wis. 49, 124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19

Ann. Cas. 1227; Gewanski v. Ellsworth, 166 Wis. 250, 164 N. W. 996; Hartnett v. Gryzmish, 218 Mass. 258, 105 N. E. 988; Hays v. Hogan, 273 Mo. 1, 200 S. W. 286, L. R. A. 1918C, 715, Ann. Cas. 1918E, 1127; Wilson v. Quick-Tire Service, 32 Ga. App. 310, 123 S. E. 733; Danforth v. Fisher, 75 N. H. 111, 71 Atl. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. Rep. 670; Bursch v. Greenough Bros. Co., 79 Wash. 109, 139 Pac. 870; Reilly v. Connable, 214 N. Y. 586, 108 N. E. 853, L. R. A. 1916A, 954, Ann. Cas. 1916A, 656; Glassman v. Harry, 182 Mo. App. 304, 170 S. W. 403; Kish v. California State Automobile Association, 190 Cal. 246, 212 Pac. 27; Orr v. Thompson Coal Co., 219 Ill. App. 116; Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338. To the same effect is Berry on Automobiles (6th Ed.), sec. 1375, p. 1139, and also 2 Blashfield's Cyclopedia of Automobile Law, p. 1414, and authorities there cited.

Of all the cases I have read I could cite many more, but I think the above are sufficient.

The case of Bryan v. Bunis, 208 App. Div. 389, 203 N. Y. Supp. 634, so freely quoted from in the main opinion, was decided on a New York statute, which is made clear in the opinion.

The length of time intervening after the servant has left the master's employment is of no consequence. 42 C. J. 1110, sec. 869.

In conclusion, the test here is—suppose, on this occasion Stewart had used his own automobile, would there have been any liablity on the part of the master? Certainly not. Suppose, under the same circumstances, he had ridden a bicycle, or had walked and had blindly stepped upon a small child and negligently caused it to be injured, would there be liability on the part of the master? Certainly not. I think there is no liability here, and that too much emphasis is placed upon the instrumentality and not enough upon the contract of employment by the main opinion.