MERCHANTS Co. *v*. TRACY.

(Division A.   Mar. 2, 1936.)

[166 So. 340.   No. 32121.]

J. B. Sykes, of Mendenhall, and Butler & Snow, of Jackson, for appellant.

J. P. and **A. K. Edwards**, of Mendenhall, for appellee.

Argued orally by **Chas. B. Snow**, for appellant, and by **J. P. Edwards**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On the night of January 2, 1934, between seven-forty-five and eight-thirty o'clock, or about that time, Gwen Tracy, while riding in an automobile being driven by her sister, Dean Tracy, was injured by a collision with a

commercial truck. The girls were driving south from D'Lo and were within the city limits of Mendenhall when they met a truck going north; the truck did not turn to the right and give them room to pass; it struck the automobile in which appellee was riding and threw it from the highway. Appellee sued for her injuries, recovered a verdict on which judgment was entered, and appellant appeals here.

The facts as to the injury are not in dispute. As we view the evidence, there is a conflict as to the owner of the truck, the driver thereof, and whether at the time of the injury the truck was being driven in the course of the master's business, and in the furtherance thereof.

On these points the evidence is about as follows: The truck which struck the car was being driven on the wrong side of the road; it did not stop, but continued north toward D'Lo after the collision. Miss Dean Tracy testified that it was a large red truck, that she saw it going up the hill, and there was a big M in a circle painted on the side of the truck. She said that later that night she called Mr. Givens, the manager of the Merchants Company at Magee, by telephone and asked him if he had a truck out on that route, and he answered, "Yes"; that she then asked him what color it was, and he asked, "why," but did not answer the question and disconnected the telephone after she told him the truck had run into her car.

J. M. Tracy testified that he had a conversation with Givens, and Givens told him that he had a truck out on that route that night but he did not think it was his truck which struck the Tracy car. Berry, a witness for appellee, testified that he heard a noise at the foot of the Westmoreland hill, that immediately thereafter a truck with a big M on it passed his home; that he had seen the truck before; that at the time a negro was driving it, and that he supposed it was loaded because it shifted gears going up the hill; that the truck was the property

of the Merchants Company which ran between Magee and Mendenhall every few days delivering goods.

Kennedy testified that he was in Magee around eight o'clock that night repairing a tire at a filling station which adjoins the warehouse of the appellant, and that he saw a truck being loaded in the warehouse, then he saw the truck leave and drive north, a colored man driving; that the truck was red and had a big M on it. He stated that he left Magee going to Mendenhall and that about four miles north of Magee he passed the truck at the top of Combs Hill; that later on he stopped at Mr. Hilton's house and the truck passed him about a mile from Mendenhall, and that when he arrived in Mendenhall the collision had occurred and he heard of it, he supposed, about fifteen minutes afterwards.

Givens, the manager of the Magee branch of the Merchants Company, testified that the company sold canned goods, hay, and other products wholesale and made deliveries by truck to D'Lo, Mendenhall, Braxton, and other points. He testified positively that at that time his warehouse used only one truck and it was a faded blue one, and that the warehouse did not operate a red truck; that the letter M in a circle was the insignia of the Merchants Company. He stated that the warehouse at Magee had only two drivers, both negroes; that Mr. Stockstill was the shipping clerk in the warehouse on the day of this collision; and that on that day several orders had been delivered to Braxton, D'Lo, and Mendenhall. Stockstill testified that he was employed in the warehouse as shipping clerk and it was his business to ship the orders on the truck; that the Merchants Company had only one truck at the Magee branch which was a blue International, and that truck had been engaged in delivering orders north at D'Lo, Mendenhall, and Braxton until about four thirty or five o'clock p. m. and did not again go in the direction of Mendenhall that day but was sent to Hattiesburg about six o'clock p. m. with Steve Mc-

Donald and R. T. Lee, the colored drivers, in control thereof. He remained in the warehouse until about eleven or twelve o'clock, when the truck returned from Hattiesburg with goods that had been ordered and which he checked in the next day; the truck was partially unloaded that night. He stated that the Magee branch did not have a truck in Mendenhall between seven-forty-five and nine on the night of January 2, 1934, and also that on that day his company did not operate a red truck from Magee.

The former night shipping clerk of the Merchants Company at Hattiesburg testified that on January 2, 1934, he loaded goods on the Magee branch truck for delivery at Magee; he did not know how many trucks were operated by the Magee branch; the one he loaded was blue. He stated that subsequently the Merchants Company had changed the color of its trucks to red. He said that two negroes, Steve and R. T., arrived in Hattiesburg on the evening of January 2d around seven o'clock, that it took about an hour or an hour and a half to load, and that immediately after the truck was loaded to capacity it left the warehouse, and that he knew nothing about the wreck.

R. T. Lee, one of appellant's truck drivers, testified that he was on the blue truck south of Magee on the night of the injury, either at Hattiesburg or enroute there, and his testimony corroborated that of Stockstill.

Two witnesses testified that they lived at Magee, and that on January 2, 1934, the Merchants Company there was using a red truck.

■ Appellant contends that the court below erred in refusing to grant it a peremptory instruction, because the proof fails to show that the truck involved in the collision was owned by the appellant, that said truck was being operated at the time by its agent or servant, and that the truck was being operated at the time in the scope of its employment and in the furtherance of its

business, but that the proof affirmatively shows the opposite as to each of these propositions.

■ Appellant contends that the verdict of the jury is against the overwhelming weight of the evidence.

■ Appellant argues that the court erred in not ordering a mistrial when its objection to a question propounded by appellee's counsel as to whether a witness being examined was employed by an insurance company had been sustained.

We are of the opinion that the court properly submitted all these questions of fact to the jury upon specific and proper instructions. It will be observed that the appellee's witnesses were positive that the truck involved in the collision was a red one; two of the witnesses stated that it was appellant's truck; three of them testified that it carried appellant's insignia, the big M in a circle. Two other witnesses testified that on the date of this accident the appellant was operating a red truck in and out of Magee. The evidence is circumstantial, but when we consider the fact that a truck of this description, which had been loaded from the warehouse of appellant at Magee, was driven north from Magee toward Mendenhall and was tracked to within one mile of the scene of the collision, we think reasonable men of fair intelligence would be justified in reaching the conclusion that the truck was owned by appellant, and this is especially true in view of the fact that the truck involved was a commercial truck, and the Merchants Company was using such a truck for the purpose of delivering its goods to its customers in Mendenhall and north thereof.

Was the jury warranted in finding from these facts that the truck was being driven by the agent or servant of appellant? On this question we would be confronted with difficulty if the instrumentality was an automobile instead of a commercial truck. If a passenger automobile not used for public hire had been seen leaving the warehouse of the appellant at Magee, that fact would have

raised no inference of ownership or of control by the Merchants Company, because any person could have driven from that point either on business or pleasure. However, according to the evidence, this truck was loaded there, the appellant's place of business was open, its shipping clerk was there, and the truck proceeded along the highway and toward places where the appellant was in the habit of delivering its goods. The truck was painted a color which disinterested witnesses testified was then being used on trucks operated by appellant. It is a fair inference that the truck was loaded in the warehouse by the agent and employees of the company, and that goods were being transported in this truck over this highway by the agent of the company for the purposes of the company and in the furtherance of its business. It is improbable and unlikely that a truck would be loaded in a warehouse under the control of appellant for any other purpose than to carry on the business of the owner of the warehouse, especially when we consider the character of the business in which this company was engaged. The ownership of a commercial truck, the loading of it at the warehouse according to the custom of the owner of the warehouse, and its progress upon the highway according to custom, give substantial basis for the fair inference that the truck is being operated by the agent of the owner. All the earmarks of the truck being under the control of the owner of the warehouse are here present circumstantially. We do not think, therefore, that the jury drew therefrom an unreasonable or unfair inference that the driver was under the control of the appellant. It is most improbable that any one else would have employed a driver for the appellant's truck operated from its place of business and apparently carrying on that business at the time. Therein is the distinction which must necessarily be made between an automobile driven for pleasure and a commercial truck, passenger bus, and the like, driven exclusively for business

purposes. The driver of the truck in this case was a "hit and run" driver, and having decided not to stop and render aid to these young ladies in their distress brought about by him, it is not probable that he would later come forward and identify himself for the purpose of aiding in a lawsuit.

The majority rule in this country is that proof of the ownership of the automobile is prima facie evidence that it was being driven by the agent or servant of the owner and in the course and furtherance of the master's business. This court does not follow that rule. We have held that the plaintiff must show the relation of master and servant as existing at the time of injury directly and not by presumption. Woods v. Clements, 113 Miss. 720, 74 So. 422, L. R. A. 1917E, 357, cited and approved in Woods v. Franklin, 151 Miss. 635, 118 So. 450; Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318; Southern Bell Telephone & Telegraph Co. v. Quick, 167 Miss. 438, 149 So. 107, and Atwood v. Garcia, 167 Miss. 144, 147 So. 813.

Where the general relationship of master and servant is shown a rebuttable presumption is raised that the servant at the time of the accident was engaged in the scope of his employment and in the furtherance of the business of the master. Barmore v. Vicksburg, S. & P. R. Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Slaughter v. Holsomback, supra, and Southern Bell Telephone & Telegraph Co. v. Quick, supra.

In Woods v. Clements, and the other cases approving it, a consideration of the question of the difference between commercial trucks or passenger busses operated for hire and automobiles generally used by the majority of our citizens was not before the court. We think there is quite a difference in the consideration of circumstantial evidence as applied to the one in contradistinction to the other. We think that we have demonstrated that the circumstances here warranted the jury in finding that

the truck was being driven by the servant of the master in the course and furtherance of the master's business.

In the light of what we have said it is hardly necessary for us to say that there was a sharp, irreconcilable conflict in the evidence as to whether or not the appellant operated a red truck at that time, but having held that the evidence was sufficient to go to the jury and having demonstrated that the jury was authorized to find for the appellee from her evidence, we do not think this is a case where we would be warranted in disturbing the verdict. We cannot apply the word "overwhelming" to the facts of this case.

While Taylor, a witness for appellant who had made an investigation of the facts, was being cross-examined he was asked the following question by counsel for appellee:

"Q. Did you represent anybody else in this matter? Don't you represent the insurance company? Objection. Sustained. Now comes the defendant and moves the court to quash the panel in this cause, and to enter a mistrial therein.

"The Court: Gentlemen of the jury, the question that Mr. Edwards asked the witness with reference to whom Mr. Taylor represented other than The Merchants Company in this case, was an incompetent question, it was not answered, you will not consider that at all, you will forget all about it."

If the question was incompetent, which is doubtful, Vicksburg Ice Co. v. Delta Ice Co. (Miss.), 119 So. 824; 36 C. J. 1128, sec. 128, we do not think it injected sufficient prejudice here to justify us in declaring the trial void.

We find no reversible error in the case.

Affirmed.