DELTA COTTON OIL CO. *v*. ELLIOTT.

(Division B. Feb. 15, 1937.)

[172 So. 737. No. 32547.]

(Division B. May 24, 1937.)

[174 So. 550. No. 32547.]

Watkins & Eager, of Jackson, for appellant.

204

**Watkins & Eager,** of Jackson, for appellant on Suggestion of Error.

206

Barbour & Henry, of Yazoo City, May & Byrd and J. O. S. Sanders, all of Jackson, for appellee.

Barbour & Henry, of Yazoo City, May & Byrd and J. O. S. Sanders, all of Jackson, for appellee on Suggestion of Error.

Argued orally by **Pat Eager**, for appellant, and by **J. F. Barbour**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee, Elliott, brought this action in the circuit court of Hinds county against appellant, Delta Cotton Oil Company, to recover damages for an injury received by him as the result of a collision between his automobile, driven by himself, and an automobile belonging to the oil company, driven by its servant Trammell, and alleged to have been caused by the negligence of the latter. There was a verdict and judgment for Elliott in the sum of $8,500; from which the oil company appeals.

The questions are whether the court erred in refusing to direct a verdict in favor of the oil company, and in giving certain instructions for Elliott and refusing certain instructions requested by the oil company. Whether the court erred in refusing to direct a verdict for the oil company turns on whether or not Trammell, at the time of the collision and injury, was engaged in its service.

The collision and injury occurred in the city of Jackson at or near the intersection of Belhaven and North State streets between 10:30 and 11 at night. North State street runs north and south and Belhaven street enters North State street from the east, North State street being its western terminus. Trammell was driving the oil company's car north on North State street, while Elliott was attempting to enter North State street and turn south. The Illinois Central Railroad Company's freight depot is on the west of the principal business section of the city of Jackson; the oil company's

plant is located about three miles southwest of the depot. Trammell was the oil company's bookkeeper. Hendry was assistant manager and field man of the oil company. He and Trammell were both unmarried and roomed at Mrs. Morrison's, near the corner of Euclid and North State streets, about two blocks from where the collision and injury occurred. The house where they roomed was about two miles from the Illinois Central freight depot, and therefore about five miles from the oil company's plant. Trammell owned an automobile; Hendry did not, but as the oil company's assistant manager and field man he required the use of one. Under his contract with the oil company, the latter agreed to and did furnish him an automobile (the one in the collision), which he used in and about the oil company's business, including the trips about over the country in the purchase of cotton seed. The understanding between them was that at night the automobile should be kept at his place of residence, and when the day's work was over he should have the right to use it for his own personal business and pleasure. During working hours, when Hendry was not out of town engaged in his field work, the automobile was kept at the plant and, when not in use by Hendry, Trammell, as well as other employees of the plant, was authorized to use it about the company's business and did so at times. Neither Trammell nor Hendry testified in the case.

About 10:30 o'clock on the night of the injury Trammell appeared at the Illinois Central freight depot and obtained from the night clerk of the railroad a bill of lading for a carload shipment by the oil company. Securing bills of lading for the company was a part of his duty. At this time the oil company's plant was not being operated at night; the entire plant, including the offices, was closed. Within a few minutes after Trammell obtained the bill of lading the collision occurred. As shown by the distances above stated, when he received the bill of lading he was about three miles from

the oil company's plant, and when the collision occurred he was about five miles from the plant and two miles from the freight depot, and about two blocks from where he and Hendry roomed. The evidence is silent as to when and where Trammell obtained the automobile. Undoubtedly he was serving the oil company when he secured the bill of lading, and the reasonable inference from all the facts and surrounding circumstances is that he used the company's car in going for the bill of lading as well as in returning the car to his and Hendry's place of residence, where it belonged at night. In so doing was he about his master's business in the sense of the law? We think this question should be answered in the affirmative under the authority of Primos v. Gulfport Laundry & Cleaning Co., 157 Miss. 770, 128 So. 507; Merchants Co. v. Tracy, 175 Miss. 49, 166 So. 340; Southern Bell Tel. & Tel. Co. v. Quick, 167 Miss. 438, 149 So. 107; and Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209.

In the Primos Case among the duties of the driver of the truck for the laundry company was the soliciting of dry cleaning. The company furnished the truck, and the driver, after the day's work was over, kept it at his home. On the night of the collision he and his wife were returning from a dance where he went to solicit business for the laundry company as well as for pleasure. The court held that it was a question for the jury as to whether or not he was engaged about his master's business. In the Tracy Case the court held that, where the general relationship of master and servant is shown, a rebuttable presumption is raised that the servant at the time of the injury was engaged within the scope of his employment and in the furtherance of the master's business. In the Quick Case the court held that, where the evidence showed without dispute that the automobile causing injury to a third person was owned by the master and used by the servant in the discharge of his duties, the burden was on the master to prove that the

servant was acting on some purpose of his own, and any doubt on the question made it one for the jury. To the same effect is the Bourgeois Case.

When Trammell received the bill of lading, he was not through serving the oil company; it was his duty to the oil company, as well as to Hendry, to return the car to the place where it was to be stored for the night. Evidently he was so engaged, for he was only a short distance away from the place at the time of the collision. That is what the evidence, reasonably interpreted, tended to show. It was, therefore, a question for the jury as to whether Trammell was serving himself or serving the oil company.

The questions as to the propriety of the action of the court in granting and refusing certain instructions grow out of the. facts and circumstances immediately surrounding the collision. Under the ordinances of the City of Jackson, automobiles are required to be driven on the driver's right-hand side of the street, except in passing from the rear, then on the driver's left-hand side of the street, and the maximum speed limit anywhere in the city is thirty miles an hour, and on entering a street intersection for the purpose of turning to the left on the street entered the center of such street must be passed before turning. The evidence showed that Elliott violated the ordinance, in that he began to turn to the left before he crossed the center of North State street. The collision took place somewhat south of the intersection of the two streets and near the center of North State street. The evidence also tended to show that Trammell was approaching at a high rate of speed, considerably more than thirty miles an hour, and in the center of the street instead of on his right-hand side; and except for the violation of the ordinances in that respect the collision probably would not have occurred. Elliott testified that Trammell tried to pass in front of his car on his (Trammell's) left-hand side of the street. The evidence is not conclusive that Elliott's negligence

in making the crossing proximately contributed to the collision.

The court refused two instructions for the oil company, both of which were peremptory on the proposition that Elliott's negligence proximately contributed to the injury. There was no error in refusing these instructions. The effect of his negligence was a question for the jury.

The oil company assigns as error the giving of the following instruction: "The court instructs you that under the testimony in this case Trammell was an employe of the defendant Cotton Oil Company, and that the automobile that collided with plaintiff's car was owned and controlled by the defendant Cotton Oil Company, and that one of Trammell's duties was to go to the railroad office and secure bills of lading, and at times used defendant's automobile in question in performing that service for the defendant, and that on the night of the collision Trammell did secure bill of lading for defendant Cotton Oil Company only a few minutes before said collision; therefore you are instructed that if you believe by a preponderance of the testimony at the time of the collision Trammell was returning from the depot where he secured the bill of lading, to his room, if you further believe from a preponderance of the testimony that the car was kept at Trammell's residence to be used in the Company's business then Trammell was the agent and servant of the defendant, Cotton Oil Company, at the time of the collision, and the defendant Cotton Oil Company would be liable for any negligence of Trammell, if you believe from a preponderance of the testimony that Trammell was guilty of negligence at that time as defined in the other instructions given you."

The criticism of the instruction is that it informed the jury peremptorily that Trammell was an employee of the oil company; that the automobile was owned and controlled by the oil company; that one of Trammell's duties was to get bills of lading for shipments, and at

times used the oil company's automobile in the performance of his duties; that on the night of the collision he secured a bill of lading for the oil company only a few minutes before the collision, and "based on this peremptory charge of facts the court then told the jury that if they believed from the evidence 'that at the time of the collision Trammell was returning from the depot where he secured the bill of lading, to his room, if you further believe from a preponderance of the testimony that the car was kept at Trammell's residence to be used in the company's business, then Trammell was the agent and servant of the defendant, Cotton Oil Company, at the time of the collision' and the company would be liable for his negligence.'' There was no error in the giving of this instruction. It was undisputed that Trammell was an employee of the oil company; that the car he was driving was owned and controlled by the company, in connection with Hendry's rights therein; that one of Trammell's duties was to get bills of lading for the company's shipments, and at times used the automobile in serving the oil company, and that on the night of the collision he secured a bill of lading for the oil company only a few minutes before the collision. It was therefore not error to charge the jury peremptorily that those were the facts.

The governing principles of contributory negligence, and the effect thereof on fixing damages, were properly submitted to the jury by other instructions. We are unable to see any substantial error in the instructions.

Affirmed.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

An examination of the original opinion in this case will disclose that the fact that appellant owned the automobile which collided with appellee was regarded as

one of the controlling and essential features in the decision of the case. Appellant, in its suggestion of error, asserts that there is not a word of proof in the entire record which sustains the statement that the automobile involved in the collision was one owned and controlled by appellant. A re-examination of the record discloses that while there is perhaps enough proof therein to support an independent finding by the jury that the automobile was the Terraplane automobile owned by appellant, the evidence is not sufficient to authorize the direct charge which appears in appellee's second instruction "that the automobile which collided with plaintiff's car was owned and controlled by the defendant Cotton Oil Company."

But in instructions 3 and 4, granted at the request of defendant, appellant here, the language used was as follows: "If you believe from the evidence that the driver of defendant's automobile," etc., and "if you believe from the evidence that the plaintiff saw or could have seen by the exercise of reasonable care the approach of defendant's automobile," etc. And in page 64 of appellant's original brief the following statement is made: "The evidence is absolutely conclusive and without dispute that while the automobile was owned by appellant, that at night and after business hours it was under the personal control of Hendry as an individual;" etc., and on page 25 of its reply brief, appellant says: "The submission of the case to the jury, as a matter of fact, really amounted to nothing more than making the appellant the absolute insurer of the safety of any person injured by reason of the operation of an automobile which it happened to own." And nowhere in the original or reply briefs for appellant was there any such argument by appellant as to put the court on notice or on guard that there was any contention that the automobile which collided with appellee had not been shown to be, or was not, the Terraplane automobile owned by appellant and used in its business.

It is elemental that the duty rests upon an appellant to show error when he presents his appeal and he must do this on the original submission; for we have time and again held that "it is rarely the case that this court will notice, on a suggestion of error, a new contention, one not assigned or argued on the submission of the case. As a general rule it is no more permissible on appeal to present a case in halves or by piecemeal than it would be on the original trial." Eady v. State, 153 Miss. 696, 697, 122 So. 199, 200. By paragraph 2, rule 6 (161 Miss. 904), we reserve the right to notice a plain error not assigned or distinctly specified, but this is in the interest of justice, and is available when, on the review of a record, we find a plain error, although appellant has overlooked it. This rule does not alter the other rule, first above stated in this paragraph, that it is the duty of an appellant to show error, and not of this court to hunt for errors. See cases cited 3 Am. Jur. p. 288.

It follows, therefore, that it is too late to raise by suggestion of error the question which appellant has thus raised here, particularly in view of the fact that the case was originally submitted as if that question was not one in real issue between the parties.

Suggestion of error overruled.