Allen's Dairy Products Co. *v.* Whittington's Dependents

No. 40414　　　　　March 4, 1957　　　　　92 So. 2d 842

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellants.

286

*Henley, Jones & Woodliff,* Hazlehurst, for appellee.

Lee, J.

Mrs. Marion Laverne Whittington and Michael Anthony Whittington filed their claim against Allen's Dairy Products Co., Inc. and its insurer to obtain benefits under the Workmen's Compensation law for the death of their husband and father, Billy Ray Whittington. At the conclusion of the evidence, the attorney-referee held that the death did not arise out of or in the course of

employment, and dismissed the claim. The full Commission, on review, reversed the order of the attorney-referee, and awarded compensation, holding that the injury and resultant death did arise out of and in the course of the decedent's employment. The circuit court affirmed the award of the Commission; and the employer and its insurer have appealed.

The deceased lived with his family in Hazlehurst. He had worked for the dairy company about thirteen months. At first he was a transport driver operating a truck daily from Hazlehurst to Vicksburg, to Natchez, to McComb, and thence to Hazlehurst. He and other drivers were required to make up detailed statements of their deliveries and collections daily. For a time the company maintained at Bishop's Cafe in Hazlehurst an office with an adding machine and necessary forms, etc. where the employees prepared the reports. Monies were deposited in the night depository of the Merchants & Planters Bank. A truck driver would pick up the reports at the office the next morning and deliver them to the office of the company in Vicksburg that day. Mrs. Whittington assisted her husband in this work and testified that, as soon as he returned from work, they immediately attended to this matter, explaining the same in great detail and showing that it took considerable time. There was also proof that the day's work did not end until the report was made, and the money was counted and deposited. On January 29, 1955, Whittington was transferred to a wholesale route in Jackson. He and his wife, at that time, were expecting a baby, and he asked permission of the manager to remain at Hazlehurst until the event occurred. He thereafter went in his own car to Jackson early in the morning, operated the truck over his assigned route, and usually got back home between two and four o'clock in the afternoon, at which time he would make up his daily report, leave it at Bishop's Cafe, and deposit the money. On August 1, 1955, the

company closed its office at Bishop's Cafe. Thereafter the employees, including Whittington, made their reports at their homes. W. E. Jackson, the general manager of the company, admitted that he required the daily reports, and that he knew that the employees were preparing these at their homes. Mrs. Whittington testified that she and her husband converted their breakfast nook to that use, where they had an adding machine and all necessary forms. Besides Whittington continued to deliver the reports to the truck driver at the cafe and place the money in the night depository of the bank. Manager Jackson testified that this course of action was in accordance with the company's policy of getting the money in transit to it as soon as possible, and by this course the company received the reports a day earlier. There was no office in Jackson. The vice president and cashier of the bank verified the fact of the daily deposits in the bank.

During the last week of his life, Whittington, after completing his regular run in Jackson, daily drove a truck to Vicksburg where he obtained a load of milk for delivery in Jackson the next day. This additional work caused him to be later than usual in getting home. In the meantime, he was to be transferred to Vicksburg on September 1, 1955, and W. E. Jackson instructed him to get an apartment in the city in order that he could begin his new job on that date. On the afternoon of August 22, 1955, he drove to Vicksburg in his own car. He supervised and checked the loading of the milk truck. This operation was completed between four thirty and five o'clock. To his brother, Bobby Joe Whittington, the driver of the loaded truck, Billy Ray gave his money and tickets for the day's work to deliver to his wife at home. His brother did so on his arrival at Hazlehurst between six thirty and seven o'clock that evening.

Whittington, in company with Paul Hennegan, spent the balance of the afternoon and a part of the evening

in trying to find an apartment. He left Vicksburg around eight thirty. His movements were unaccounted for thereafter until he was fatally injured between nine twenty and nine forty-five in an automobile accident, about two miles north of Hazlehurst, as he was proceeding south on U. S. Highway No. 51.

Among other things, the appellants contend that the decedent, at the time of his death, was not selling, loading, delivering, or collecting for milk, nor did he suffer the injury while making out his reports or depositing the money, and that he was not engaged at the time in furtherance of his master's business, but that the dominant purpose of the trip to Hazlehurst was personal.

The case has been well briefed by counsel on both sides. Numerous authorities from this Court, and other jurisdictions, have been cited. Due consideration has been given thereto. However, this Court seems to have already passed on the several principles here involved.

■■ ■ It must be kept in mind that Whittington performed duties for his employer in delivering milk in Jackson and in making up his reports in his home at Hazlehurst. Larson's Workmen's Compensation Law, Vol. I, Section 18.31, p. 253, in dealing with the claims of employees who do part of their work at home, says: "Viewed in one way, the trip home of such an employee may be analogized to the trip from one of the employer's buildings to another *via* the public streets, which is generally agreed to be within the course of employment." He explains that this cannot be a sweeping rule. The text cites Proctor v. Hoage, 81 Fed. 2d 555, where the claimant had to go home in order to make out his report regardless of whether he slept there or not.

In Ready's Shell Station & Cafe v. Ready, 218 Miss. 80, 65 So. 2d 268, Mrs. Ready performed duties in and about the station and cafe in the daytime, and did her bookkeeping work at home, after she left the station. As she went to the couch to begin her work that evening

she observed the shotgun, and, in an effort to get it out of her way, she took hold of it. It discharged and caused the injury for which she sought compensation. The opinion, affirming the award of compensation, cited the above quotation from Larson.

While Whittington made a deviation from his employment, when he began the search for an apartment in Vicksburg, he had returned to his course because, at the time of his fatal injury, he was within two miles of Hazlehurst, headed south on Highway 51, the course usually traveled to his home. Retail Credit Company v. Coleman, 227 Miss. 791, 86 So. 2d 666, and cases there cited. To make out his report for the day and deposit the money as required, it was necessary for him to proceed to Hazlehurst as his wife already had his records, money and tickets. In the Ready case, supra, Mrs. Ready had not actually begun her work on the books. She was prepared to do so when it was deemed necessary to move the gun in order to facilitate her work. Likewise, as incidental to the performance of his work, it was necessary for Whittington to go home.

This Court has recognized as one of the exceptions to nonliability for injuries received by employees on the way home from work, those cases "where the employee performs some duty in connection with his employment at home." Wallace v. Copiah County Lumber Company, 223 Miss. 90, 77 So. 2d 316. In that case, the evidence substantially showed that Wallace received his injury after he had completed his day's work and was walking along the highway to his home. It was not shown that he had any duties to perform for his employer at his home. Likewise, benefits were denied to the claimants in Ferguson v. Sohio Petroleum Company, 225 Miss. 24, 82 So. 2d 575, where a lighted heater set off the gas and burned Ferguson to death as he was taking a bath in his home. Recovery was denied because the victim had already completed his work for the day. It is clear

that an employee must be fulfilling his duties or doing something incidental thereto, in order to receive benefits. Larson's Workmen's Compensation Law, p. 193; 58 Am. Jur., Workmen's Compensation, pp. 720-1; Persons v. Stokes, 222 Miss. 479, 76 So. 2d. 517.

Moreover, in Vestal & Vernon Agency v. Pittman, 219 Miss. 570, 69 So. 2d 227, this Court said: ''Pittman, at the time of his injury, was evidently on his way to Jackson so that he could report and attend the meeting the next morning—a duty to the Agency. Undoubtedly he also expected to go home—a benefit personal to him. The existence of such dual purposes does not defeat claims for compensation. On the contrary, when they arise under those circumstances, they are compensable. Mills, et al. v. Jones Estate, 213 Miss. 680, 56 So. 2d 488, and authorities there cited.'' Those citations included A. L. I., Restatement of Agency, Section 236; Primos v. Gulf Laundry and Cleaning Company, 157 Miss. 770, 128 So. 507; Delta Cotton Oil v. Elliott, 179 Miss. 200, 172 So. 737, 174 So. 550. Whittington was driving his own car just like Pittman was doing at the time of his death. If he had not already sent his money and tickets to his wife, he would have been in the same situation as Pittman, who ''had on his person applications for policies and checks in payment of premiums.'' To make out the report for that day, obviously Whittington had to get to Hazlehurst where his wife had the records necessary for that purpose. The making of the report was required. Besides, it was a benefit to the company because, in so doing, the transmission of the money was effected a day earlier. Although Whittington was enabled to stay at home, a benefit personal to him, yet he also performed a service for his employer. The existence of these two purposes does not defeat the claims. The case of Whittemore Brothers Corporation v. De Grandpre, 202 Miss. 190, 30 So. 2d 896, recognizes the prin-

ciple here involved, although it was a construction of the Massachusetts Workmen's Compensation Act.

It therefore follows that the Commission had substantial evidence on which to base its finding that Whittington's death arose out of and in the course of his employment when viewed in the light of the governing principles heretofore stated.

The cause is therefore affirmed and remanded.

Affirmed and remanded.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.