398 So.2d 1325 (1981)
James H. SIPE
v.
Michael D. FARMER.
No. 52590.
Supreme Court of Mississippi.
June 3, 1981.
*1326 Michael J. Malouf, Michael K. Henry, Malouf & Malouf, Jackson, for appellant.
Allan P. Bennett, Robert H. Weaver, Watkins, Ludlam & Stennis, Jackson, for appellee.
Before SMITH, WALKER and BROOM, JJ.
WALKER, Justice for the Court:
This is a personal injury action based upon assault and battery. The defendant, James H. Sipe, appeals from a judgment of the Circuit Court of the First Judicial District of Hinds County in favor of the plaintiff, Michael D. Farmer, for $250,000. He raises seven assignments of error.
On the evening of January 25, 1978, Michael D. Farmer's unconscious body was found lying on the access ramp to the parking garage of the Holiday Inn on Amite Street in downtown Jackson. Farmer was taken to the Mississippi Baptist Hospital, where it was determined that he had suffered a fractured skull and a broken wrist. He remained an in-patient at the hospital for approximately thirty-five days. During this time he underwent multiple operations and received extensive medical care and treatment.
Farmer thereafter filed this suit against James H. Sipe, alleging that Sipe struck him on the left side of his head and on his right wrist with a heavy blunt instrument, such blows causing him to lose consciousness and fall or be knocked over a retaining wall on the northern-most end of the second floor of the Holiday Inn parking garage to the concrete surface of the garage exit ramp below. He alleged, alternatively, that he had jumped over the retaining wall following the blows in an attempt to escape further injury and save his life.
In his answer, Sipe denied the above allegations, but admitted that he struck Farmer once with his fist. After the disposition of several pre-trial motions, the cause was tried before a jury. The only seriously disputed *1327 issue was whether or not Sipe caused the injuries sustained by Farmer, as alleged in the declaration.
Sipe testified that on the evening of January 25, 1978, he found his wife's car parked in the parking lot of the Holiday Inn on Amite Street in downtown Jackson. Unable to find his wife in the lounge, he returned to the parking lot and let the air out of her right rear tire. He then went home and waited for her to call him to fix the flat tire. Her call never came. Shortly after ten o'clock p.m. Sipe returned to the Holiday Inn parking lot and parked his car in a position where he could view his wife's car. A few minutes later he observed his wife walking to her car with the appellee, Farmer. Sipe then got out of his car and approached the other two. As he approached he saw his wife sitting in the car and Farmer leaning over the open door with his head close to Sipe's wife. He stated that it appeared to him that Farmer was kissing his wife. He said, "Who in the hell are you with my wife." He then hit Farmer on the back of his neck or head with his fist and stepped back to defend himself. Farmer ran and Sipe gave chase but was interrupted when his wife backed the car out of the parking space and almost ran over him. Sipe stated that he never got within twenty to thirty feet of Farmer thereafter but, instead, got into his car and followed his wife's car out of the parking lot. Sipe denied that he had any instrument in his hand or that he was ever close to Farmer when Farmer fell or jumped over the retaining wall to the access ramp below.
Farmer's testimony was sharply conflicting with Sipe's. According to Farmer, Sipe said something in a very loud voice as he approached him from behind. Mrs. Sipe then closed her car door and took off in a hurry. Farmer testified that he ran away from Sipe to the wall on the second floor of the garage. He related what then happened as follows:
I looked over the wall and thought, `My god, I'll break a leg if I go down there,' so I turned around to try to at least calm the man down and tell him, `nothing  just a friend.' I was attempting to try that when he hit me as hard as he could with a tire tool. That's exactly what he did. And apparently I tried at that point to turn around and get away or go on over the wall but what I did, I can't tell you because I don't know. I assume I tried.
In addition to Farmer's testimony, he presented expert medical testimony about the cause of his injuries. The medical testimony was that the pattern of bone fragmentation sustained by him was consistent with a blow by a blunt instrument, such as a tire tool. On the other hand, Sipe presented expert testimony that the skull fracture was consistent with an injury one would sustain in a fall onto a smooth concrete surface.
The jury found Farmer's version of the events to be more credible and returned a verdict for Farmer in the amount of $250,000 actual damages. The jury made no award for punitive damages requested by Farmer. On this appeal Sipe does not question the amount of the damages awarded or the sufficiency of the evidence to support the jury's verdict. However, he does allege that there were several errors in the trial which prevented him from presenting his case to the jury and contends that these errors require that we reverse and remand the cause for a new trial. These errors will be separately discussed below.

I.

DID THE LOWER COURT ERR IN DISMISSING APPELLANT'S COUNTERCLAIM PRIOR TO TRIAL?
Sipe incorporated in his original answer a counterclaim, alleging alienation of affection of his wife. Farmer filed a motion to strike the counterclaim on the basis that it did not arise out of and was not connected with the subject matter of the assault and battery claim and was not within the contemplation of Mississippi Code Annotated section 11-7-69 (1972). The lower court apparently sustained this motion. *1328 (No order sustaining the motion appears in the record. However, the appellee has addressed this assignment of error on the merits.) Section 11-7-69 provides, in part, as follows:
In all suits at law where the defendant has a claim or demand against the plaintiff arising out of or connected with the situation, occasion, transaction or contract or subject matter upon which the plaintiff's action is based, ... the defendant in his answer may plead his claim or demand against the plaintiff by way of counterclaim, in recoupment, stating the facts upon which such counterclaim is based. (Emphasis added).
The counterclaim alleged that on January 25, 1978, Mr. Farmer engaged in a love affair with Mrs. Sipe and attempted to persuade her to leave Mr. Sipe. The appellant claims that the counterclaim is proper because it is closely connected with the subject matter upon which the original claim is based.
We agree that the allegations of alienation of affection in the counterclaim were so closely connected with the subject matter of the original suit, i.e., the assault and battery of Farmer by Sipe for Farmer being caught at a motel with Sipe's wife, that the lower court should have permitted the counterclaim to be tried along with the original claim. It is unimportant that Sipe did not know of the alleged love affair and talk of divorce and marriage prior to the battery.
The appellee's reliance on Irby v. Citizens National Bank, 239 Miss. 64, 121 So.2d 118 (1960) is misplaced. In Irby, the plaintiff sued on a promissory note and the defendant counterclaimed for wrongful interference with his business. However, the alleged interference took place one year prior to the execution of the note. This Court said that the counterclaim had "no causal or factual relation to the promissory note" and affirmed the trial court's action in sustaining the motion to strike the counterclaim.
A similar situation was presented in Lister v. Bank of Lucedale, 349 So.2d 1056 (Miss. 1977). In Lister, the plaintiff filed suit for the balance due on a promissory note. The defendant filed a counterclaim, alleging that the Bank rudely interrupted a business deal and ruined it. The defendant alleged that the Bank official committed a tort and damaged him when he discussed the collection and payment of the note sued upon and the defendant's credit relationship with the Bank in the presence of the defendant's business associate. The Court stated that the counterclaim should not have been dismissed because it was "connected with the situation" giving rise to the original suit as required by the counterclaim statute.
Likewise, the counterclaim in the case at bar alleged facts which were so closely connected with the situation upon which the plaintiff's action was based as to make it a proper counterclaim under the statute.

II.

DID THE LOWER COURT ERR IN SUSTAINING APPELLEE'S MOTION IN LIMINE, PROHIBITING THE INTRODUCTION OF CERTAIN EVIDENCE?
Prior to the trial the lower court entered an order prohibiting Sipe from introducing evidence relating to events about which he had no actual knowledge at the time of the alleged assault and battery, including whether Mrs. Sipe had been with Michael Farmer in his room between the hours of approximately 6:00 p.m. and 10:30 p.m., or whether Farmer and Mrs. Sipe engaged in sexual intercourse in Farmer's hotel room, or whether Farmer and Mrs. Sipe had on any occasions prior to January 25, 1978, engaged in any acts of sexual intercourse.
The court correctly ruled that these matters were not admissible insofar as they related to the assault and battery. Morache v. Greenberg, 116 Conn. 549, 165 A. 684 (1933); 6A Am.Jur.2d Assault & Battery § 224 (1963); 6A C.J.S. Assault & Battery § 47 (1975). However, the evidence would be relevant to the counterclaim. On retrial, unless the counterclaim is dismissed *1329 for some other reason, Mr. Sipe should be allowed to present all evidence relevant to his counterclaim charging alienation of affection, regardless of whether he had specific knowledge of those facts at the time of his alleged assault and battery.

III.

DID THE LOWER COURT ERR IN ADMITTING EVIDENCE OF A SUBSEQUENT ASSAULT UPON A DIFFERENT PARTY?
Prior to trial Mr. Sipe filed a motion in limine to prohibit Farmer from introducing evidence that Mr. Sipe had assaulted his wife immediately subsequent to the alleged assault upon Farmer. The parking lot attendant at the Holiday Inn testified that Sipe drove down the exit ramp shortly after Mrs. Sipe and drove his car in front of her to prevent her from leaving the parking lot. He then struck his wife several times, pulled her hair, and generally threatened and abused her. Although the appellee contends that such evidence was relevant to show the intent and state of mind of Mr. Sipe, the argument is not convincing. The evidence had little, if any, probative value, and was extremely prejudicial to the appellant. The motion in limine should have been sustained.

IV.

DID THE LOWER COURT ERR IN ALLOWING THE APPELLEE'S MEDICAL EXPERT TO GIVE AN OPINION ON THE ULTIMATE FACT IN ISSUE AND TO BASE SUCH OPINION ON EXTRAJUDICIAL HEARSAY STATEMENTS?
The lower court, over strenuous objections by appellant, allowed the appellee's treating physician and expert witness to state his opinion as to the type of outside force or forces which would cause an injury of the nature he found on Michael Farmer. He stated that in his opinion the type injury Farmer sustained would have to be delivered by a blunt instrument as opposed to a sharp, like a knife, instrument with a small end. He also testified that in his opinion the injury could not have been caused by a fall.
We are of the opinion that it was not error, under the particular circumstances of this case, to allow the physician to give his conclusion after he explained why he reached that conclusion. Ordinarily, we let the witness tell the facts and leave it to the jury to determine the conclusion to be drawn from the facts. Hagan Storm Fence Co. v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963).
However, since an expert witness, in a sense, discharges the functions of a juror, his opinion should be admitted if it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, of drawing a correct conclusion from the facts. Illinois Central Railroad Co. v. Williams, 242 Miss. 586, 135 So.2d 831 (1961).
In this case it is extremely doubtful that a juror could have drawn any conclusions from a simple recitation of the facts, such as the pattern of the skull fracture and the evidence or lack of evidence of a contracoup injury. In this case there was conflicting medical testimony about the cause of the skull fracture. Each medical expert, plaintiff's and defendant's, was permitted to give the facts on which he based his conclusion and to give his conclusion about the cause of the injury. This did not usurp the jury's function, as the jury need not have accepted the conclusion of either expert witness. Therefore, under the circumstances of this case, it was not error to allow the expert witnesses to testify and give their conclusions about what force caused the particular skull fracture. We do note, however, that this Court does not yet apply Fed. R. Evid. 704, and this opinion should not be read as a sign that the Court has begun to relax the rule announced in previous opinions that an expert witness may not give his opinion on the ultimate issue.
The appellant's contention that the testimony of Dr. Feegle was based on hearsay is not supported by the record. Although Dr. Feegle did testify that he wanted *1330 to have the benefit of Dr. Stringer's observations from surgery, the record reveals that his testimony was based on his analysis of the hospital's records, his examination of the scene of the parking lot, the X-rays, his experience and his general knowledge of the medical literature on these and other points. There is no evidence that he based his opinion in whole or in part on what another doctor told him.

VII.

DID THE LOWER COURT ERR IN REFUSING TO ALLOW THE JURY TO APPLY THE STANDARDS OF REASONABLENESS IN CONSIDERING THE ACTIONS OF THE APPELLEE?
The appellant requested jury instructions to the effect that he would not be liable for the injuries sustained by the appellee if they found that the appellee acted unreasonably in jumping over the wall and that the injuries were the results of this unreasonable action. Instructions D-10 and D-2 were properly refused. Instruction D-3, although inartfully drawn, should have been granted because it embodied the appellant's theory of his defense that Farmer acted unreasonably after the initial battery in running and jumping over the retaining wall. On retrial it would be proper to grant such an instruction if it is tied in sufficiently to the facts in this case.
Assignments of error V and VI are without merit.
For the numerous reasons outlined above, this cause is reversed and remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, and BOWLING, JJ., concur.
HAWKINS and BOWLING, JJ., specially concur.
HAWKINS, Justice, specially concurring:
I agree the case must be reversed because of the introduction of prejudicial testimony. I likewise agree that the counterclaim was properly pleaded under Mississippi Code Annotated § 11-7-69 (1972).
I do respectfully suggest, however, that the majority opinion should make it clear that simply because a counterclaim has been properly pleaded, it is not therefore mandatory upon the trial judge to try the original cause of action and counterclaim in a single trial. It is my opinion the trial judge has inherent power in exceptional cases to grant a severance on separate and distinct issues, and conduct separate trials of the original cause of action and the counterclaim. Furthermore, I cannot see how a party can claim prejudice simply because the counterclaim is severed and not tried in the same trial with the declaration. Granting a severance of separate issues such as expressed in a declaration and in a counterclaim is a matter which should be left in the sound discretion of the trial court.
The headnote to 88 C.J.S. TRIAL, § 9 reads:
"Although generally a lawsuit should not be tried piecemeal, in a proper case separate trials of distinct issues may be had, and it is within the discretion of the trial court to direct or refuse separate trials of different issues."
As to counterclaims, this same authority, page 35 reads:
"In some jurisdictions a separate trial of the issue or issues raised by a cross claim or counterclaim is frequently, although not always, deemed proper and necessary; but in other jurisdictions the practice is to dispose of plaintiff's claim or demand and a set-off, counterclaim, reconventional demand or other cross claim at one trial. Whether separate trials of a main action and a counterclaim or cross claim should be granted is within the discretion of the trial court." (emphasis added)
I do not read § 11-7-69 as mandating a single trial of the declaration and counterclaim in all circumstances.
BOWLING, J., joins in this specially concurring opinion.