ROY NOBLE LEE, Presiding Justice,
for the Court:
Byron Neal Todd, Sr. filed suit in the Circuit Court of the Second Judicial District of Jones County, Mississippi, against E.R. Turnbull, M.D., seeking damages for personal injuries on a charge of malpractice. The jury returned a verdict in favor of Dr. Turnbull and judgment was entered in his behalf by the lower court. Todd has appealed to this Court assigning three (3) errors in the trial below. We affirm.
The facts of this case are largely undisputed except for the testimony of the parties’ expert medical witnesses, which are in direct conflict. In 1974, it was discovered that appellant had cirrhosis of the liver, while hospitalized in Jackson, Mississippi, and the cause of the cirrhosis was related to appellant’s excessive alcohol consumption. Between 1974 and December 8, 1981, the date of the trial below, appellant was hospitalized on several occasions. In 1974, a double coronary bypass was performed on him. In 1978, and subsequently, he had problems relating to his liver, which included edema (swelling of the ankles) and as-cites (swelling of the abdomen). In addition, he experienced jaundice and spider angiomata, both related to his liver disease.
On December 9, 1979, at approximately 6:45 a.m., appellant cut his thumb while attempting to hang a mirror. He went to the emergency room of the Jones County Hospital where appellee, Dr. E.R. Turnbull, the orthopedic surgeon on call, was summoned. Dr. Turnbull treated and repaired the cut and sutured a severed tendon in appellant’s thumb.
Appellee placed appellant’s hand in a cast in order to immobilize it. The cast was open at the fingers and extended to the mid-portion of appellant’s arm. Appellee instructed him to keep his hand elevated and to return in a week for removal of the stitches. The next day, appellant came back to the hospital complaining of pain and swelling. Appellee determined that the swelling was not severe and he noted that appellant had been drinking alcohol prior to his office visit. Appellee .instructed appellant to go home, continue to elevate his arm, and told him not to drink intoxicants. Appellee did not know at that *73 time appellant was an alcoholic or that he had cirrhosis of the liver.
On the next day, December 11, 1979, appellant again returned to appellee’s office where appellee discovered that the swelling and pain had increased to such a degree that he removed the cast and placed appellant’s right hand in an open splint. Appellee did not feel there was a need to prescribe antibiotics, although he did prescribe a pain killer.
The following day, December 12, appellant was seen in the emergency room by appellee at approximately 7 a.m. There was a marked change in his condition and significant evidence of severe deterioration of his general physical health. He was jaundiced around the scelera, and his hand was very swollen. A physical examination revealed that his lower extremities were swollen, his stomach was protuberant, and his liver was enlarged. Appellant appeared to be confused and disoriented and was obviously quite ill. He was admitted to the hospital for evaluation of his deteriorating medical condition. A local internist, Dr. Daniel Jones, was consulted because of the jaundice and swelling. Jones diagnosed chronic liver disease, probably cirrhosis, due to alcohol abuse.
Appellant’s liver condition deteriorated during his hospital stay to the point that his life was in danger. The condition of his hand also worsened. Tissue over the base of his hand became necrotic (tissue looses viability) and the right ring finger became non-viable. Debridement of the tissue was carried out. Eventually, the liver condition stabilized and improved, but because of bleeding problems and difficulty matching blood, appellant was transferred to the Baptist Hospital in Jackson, Mississippi, for further care by a plastic surgeon and gas-troenterologist. While hospitalized in Jackson, appellant’s right ring finger was amputated, and tendons in his right hand were removed. As a result, appellant has 100% disability to his right hand.
Appellant’s expert witnesses’ opinions, formed from the facts set forth in hypothetical questions, were that the ultimate deterioration of appellant’s hand was due largely to the fact that appellee applied a spica cast rather than a splint at the time he repaired the tendon in appellant’s hand. James Martin, a general practitioner from Ocean Springs, stated that the cast applied by appellee “is a constrictive, circularizing, rigid device, which is well known to cause difficulties in injuries of this nature.” He further testified that it was this ischemia and necrosis that caused the liver failure at that time.
Frank Martin, brother of Dr. James Martin, a general surgeon from Biloxi, testified in appellant’s behalf. His opinion was basically the same as that of his brother upon hearing the hypothetical questions.
Appellee Dr. Turnbull appeared as his own expert witness and testified that there was no evidence of ischemia on the hand on December 12, 1979, when he first saw appellant and that the rapid deterioration of the hand^ was caused by the progression of liver failure.
Dr. Daniel W. Jones, an internist from Laurel, who attended appellant while he was in the hospital at Laurel, testified that the swelling of appellant’s hand and its subsequent deterioration was caused by appellant’s liver disease and had nothing to do with the placement of the cast.
Dr. Michael E. Jabaley, a hand surgeon from Jackson, testified by deposition that in his opinion the use of the thumb spica cast was acceptable. Dr. McWillie Robinson, Jr., an orthopedic surgeon from Jackson, testified that in his opinion the thumb spica cast was appropriate and that the complications of appellant were due to his liver disease.
I.
THE LOWER COURT ERRED IN GRANTING APPELLEE’S INSTRUCTIONS D-7 AND D-8. INSTRUCTION D-8 IS AN IMPROPER COMMENT ON THE EVIDENCE AND BECAME A PEREMPTORY INSTRUCTION WHEN *74 READ IN CONJUNCTION WITH INSTRUCTION D-7.
The instructions follow:

Instruction No. D-7

The court instructs the jury that even if you believe from a preponderance of the credible evidence that the plaintiff, Byron Neal Todd, suffered complications following the repair of the extensor tendon laceration, which complications resulted in impairment of function of the right hand, and if you further believe from a preponderance of the credible evidence that the complications and resulting impairment were due solely to the failure of the wound to heal properly as the result of a pre-existing severe chronic liver disease, if you so believe, and was not the proximate result of or due to the treatment furnished by Dr. Turnbull, then it is your sworn duty to return a verdict for the defendant, E.R. Turnbull, M.D.

Instruction No. D-8

The court instructs the jury that the plaintiff, Byron Neal Todd, had a history of alcoholism and severe chronic liver disease when he cut his thumb on December 9, 1979. The court further instructs you that if you believe from a preponderance of the credible evidence that the treatment of plaintiffs right thumb by Dr. Turnbull did not proximately cause or contribute to the major complications that followed, if you so believe, and that the complications were caused solely by the pre-existing liver disease, if you so believe, then it is your sworn duty to return a verdict for the defendant, E.R. Turnbull, M.D.
Appellant contends that the first sentence of Instruction D-8 was an improper comment on the evidence and when read together with D-7, it created a peremptory instruction, leaving the jury no choice except to return a verdict for appellee.
As set forth in appellee’s brief, there was no substantial dispute that appellant “had a history of alcoholism and severe chronic liver disease when he cut his thumb on December 9, 1979.” His liver disease was described by appellant’s witnesses as “cirrhosis of the liver ... liver problems ... liver disease ... advance liver disease ... severe liver disease ... major liver disease ... severe cirrhosis of the liver — a condition which is permanent and to a large extent irreversible.” Witnesses for the ap-pellee described appellant’s liver disease as “very far advanced stage of liver disease ... severe liver disease ... chronic liver disease, probably cirrhosis ... very serious, very severe liver disease, severely damaged, ... severe alcoholic liver disease.”
The first sentence of Instruction D-8 simply set forth what the uncontradict-ed facts were. It then instructed the jury that if they believed from a preponderance of the evidence the treatment of appellant’s right thumb by Dr. Turnbull did not proximately cause or contribute to the major complications that followed and that the complications were caused solely by the preexisting liver disease, then the verdict should be for defendant. The instruction was proper and submitted the issue to the jury. Instruction D-7 states in part: “that the complications and resulting impairment were due solely to the failure of the wound to heal properly as a result of a preexisting severe chronic liver disease, if you so believe, and was not the proximate cause of or due to the treatment furnished by Dr. Turnbull, then it is your sworn duty to return a verdict for the defendant.” Both instructions properly submitted the issue to the jury, they were correct, either when read together or when read separately.
In Arnold v. Reece, 229 Miss. 862, 92 So.2d 237 (1957), a similar contention as that in the case sub judice was presented to the Court. We said:
Appellants say the granting of this instruction was error. In granting this instruction, the learned trial judge evidently concluded that the facts as assumed in the instruction had been established by the testimony. In this we think *75 he was correct. The instruction then correctly stated the legal rule that failure to comply with the statute was negligence. The only question left was whether such negligence contributed to bringing about the wreck. The jury found it did. The record discloses ample evidence to support that finding. The main argument of Appellants is that this instruction had the effect of prejudicing the jurors against Appellants. Whether that is true or not we, of course, cannot say, but even so, the established facts could properly be assumed in an instruction. Competent, relevant facts are not made incompetent because they may produce strong reactions for or against a party to litigation.
229 Miss, at 868, 92 So.2d at 239. See also Delta Cotton Oil Co. v. Elliott, 179 Miss. 200, 172 So. 737 (1937); Hankins v. Sanderson Farms, Inc., 226 So.2d 723 (Miss.1969).
We are of the opinion that there is no merit in this assignment of error.
II.
THE LOWER COURT ERRED IN PERMITTING THE APPELLEE PHYSICIAN TO GIVE AN EXPERT OPINION WHICH INVADED THE PROVINCE OF THE JURY.
The following questions were asked of appellee during his case in chief:
MR. FERRIS:
Q. Dr. Turnbull, I have one more question for you. Based upon your education, background and experience, and based upon your examination and treatment provided to Mr. Todd, do you have an opinion as to whether the care and treatment you provided to him beginning on December 9, 1979, until December 12, 1979, was in keeping with the standard of care in orthopedic surgery in this area in December, 1979?
A. I do.
Q. What is your opinion, Dr.?
A. It was.
Appellant contends that the questions were improper because they invaded the province of the jury in that they related to the ultimate issue involved in the litigation. He cites Hagan Storm Fence Co. v. Edwards, 245 Miss. 487, 148 So.2d 693 (1963), where the expert testimony of an acciden-tologist was admitted, placing the responsibility and fault for the collision, when the accidentologist constructed the collision from facts given him. We distinguish the Hagan case, which involved an automobile collision from the case sub judice which involves malpractice. Expert witnesses testified in opposition to the position of appellee. Others testified in support of his action, and gave their express opinions as to whether or not appellee was negligent in his treatment of appellant.
We think that it would be a rank injustice to appellee, the physician who originally attended and treated appellant, to preclude him from saying what he did and whether his actions were reasonable and free from negligence. See Taylor v. State, 452 So.2d 441 (Miss.1984); Sipe v. Farmer, 398 So.2d 1325 (Miss.1981). If the Court precludes such testimony and opinion, it would be tantamount to telling a person charged with the commission of a homicide that he could not give his reason for taking the life of the victim and could not deny his guilt. We reject this assignment of error.
III.
THE LOWER COURT COMMITTED PLAIN ERROR BY GRANTING AP-PELLEE’S INSTRUCTION D-3 AND D-5. INSTRUCTIONS D-3 AND D-5 CREATE A STRICT OR ABSOLUTE LOCALITY RULE WHICH REQUIRED THE JURY TO EXCLUDE THE TESTIMONY OF THE APPELLANT’S EXPERT WITNESSES.
Instructions under the present assignment follow:

Instruction D-3

Before you may find for the plaintiff, you must first find that Dr. Turnbull *76 failed to exercise the care, skill, and diligence that orthopedic surgeons in good standing in the Laurel, Jones County, Mississippi, area exercised in like cases....
Defense Instruction D-5 read in part as follows:
The law requires only that he possess and exercise that degree of care, skill and diligence possessed and exercised by reasonably careful, skillful, diligent and prudent physicians in good standing engaged in the practice of orthopedic surgery in the Laurel, Jones County, Mississippi, area during the time period involved, and under like or similar circumstances.
Appellant made no specific objection to those instructions on the grounds which he complains of on this appeal. Under Miss.Sup.Ct. Rule 42, he will not be permitted to raise that question unless we note plain error, and this we decline to. In King v. Murphy, 424 So.2d 547 (Miss.1983), the Court laid down the present rule as follows:
We are of the opinion that the locality or neighborhood rule in the State of Mississippi should not be abolished, but it should be extended and expanded. Therefore, we hold that the standard of care by which the acts or omissions of physicians, surgeons or specialists are to be judged shall be that degree of care, skill and diligence practiced by a reasonably careful, skillful, diligent and prudent practitioner in such field of practice or specialty in this state, and for a reasonable distance adjacent to state boundaries. An expert witness who is knowledgeable of, and familiar with, the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this state.
424 So.2d at 550.
Witnesses for and against the appel-lee testified at length about the facts establishing a standard of care. Under King v. Murphy, the standard of care is the same in Laurel as it is throughout the State of Mississippi. We find no reversible error under this assignment.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.